STATE, Respondent, vs. SMITH, Appellant.*

*May 16—June 10, 1947.*

* Motion for rehearing denied, without costs, on September 9, 1947.

For the appellant there were briefs by *Willis E. Donley*, attorney, and *William B. Collins* of counsel, both of Menomonie, and oral argument by *Mr. Donley.*

For the respondent there was a brief by the *Attorney General, William A. Platz,* assistant attorney general, and *Henry E. Steinbring,* district attorney of Eau Claire county, and oral argument by *Mr. Steinbring* and *Mr. Platz.*

FAIRCHILD, J. The appellant seeks to have the judgment reversed and to be discharged or to have a new trial granted on his assignments of error, to wit: That at the time the state's case was closed, the defendant was entitled to be discharged for the reason that he took no part in planning the burglary and did not share in the division of the money; that the court erred in conveying his opinion of Smith's guilt by asking questions of Witness Hodgman and that there were other errors which may be summarized as constituting an invasion of the province of the jury, including errors in the court's instructions to the jury; and, finally, that all the evidence in the record does not support the verdict of the jury.

These contentions must be held to be without merit. We are here particularly concerned with whether the record in this case is so free from prejudicial error that we must affirm the judgment. Counsel for appellant urges as a reason for a new trial that the trial judge created the impression that he thought

defendant guilty. This assignment is based upon the fact that the judge did ask certain questions of a witness who was an accomplice. Those questions were far from disclosing an opinion of the court that defendant was guilty. While the questions ought to have been more carefully framed when asked in the first instance, they were amended so as to be proper and do not bring the court's conduct within the condemnation of the rule of such cases as *State v. Johnson,* 221 Wis. 444, 453, 267 N. W. 14. The questions pointed to, if separated from all that occurred in the trial, might be subject to objection. However, those questions, as well as testimony about the division of the spoils of the burglary, to which testimony objection was raised, are so related to other established facts as to eliminate any probable prejudicial error.

Certain instructions were challenged, but here again we find no prejudicial error. The case was tried by the defense upon the theory that the defendant's connection with this affair was entirely accidental. Although the court said: "The only question you will have to determine is this: Did this defendant aid and assist in the commission of the offense?" the jury could not have been mislead as to the importance of an acquaintance with the plan and an intent to assist, because the jury was also told: "You are further instructed that under the law of this state every person who counsels with, aids, abets or assists another in the commission of a crime is guilty the same as a principal and may be charged, tried and, if the evidence warrants, be convicted the same as a principal. If the defendant, Glen Smith, together with Gerald Singer and Donald Hodgman made an agreement to break and enter the Colyar dwelling house with the intent to commit the crime of larceny and then one or more of them went in there pursuant to such agreed plan, they are all guilty of the offense charged in the information." This instruction was based on sec. 353.05, Stats., which reads in part,—

"Every person concerned in the commission of an offense, whether he directly commits the offense or aids or abets in or hires, counsels or otherwise procures its commission, may be indicted or informed against as principal and tried thereon either separately or with others concerned, and may be convicted of and sentenced for any degree of the offense charged or any offense included in the charge, whether the person directly committing the offense has been convicted or acquitted. . . ."

The verdict of the jury is clearly supported by the evidence in the record. The proof of guilt is too persuasive to afford any reason to suppose there has been a miscarriage of justice. Smith admits an association with the conceded actors in this crime, and the record shows that association to have been an intimate one of considerable duration. There were conferences a week or more before the crime was committed. There was a previous visit to Eau Claire in company with the ones who actually entered the building. Defendant was present at the appointed place for a meeting after the crime was committed. He accompanied the others to the home of Shirley Christeson, where some $2,000 worth of loot was divided. Although there may be some uncertainty as to who handed him the portion of the loot designed for him, it does appear with sufficient certainty that after the money had been divided into four piles, Singer took his, Hodgman his, and Moriarity his share, and almost immediately Singer, Hodgman, and Smith got into Smith's car with Shirley Christeson and drove to Minneapolis. It appears that en route the group stopped for breakfast at a cafe in St. Paul, where there was a discussion over division of the money, and it was decided, while she was away from the table, that Shirley Christeson was to be given $50 by each of the three men. The testimony is that Singer and Hodgman each gave $50 to defendant to deliver to her.

Defendant's excuses for doing the things he admitted doing evidently impressed the jury as weak and not to be relied upon

as truthful testimony. His explanation that he made the trip to Eau Claire on July 28th to take Shirley Christeson home was a doubtful one to say the least. She had come to Minneapolis from Eau Claire that very evening after telephoning him she was coming. He testified that he drove back to Eau Claire because his wife told him to take Shirley back. His protestation that he knew nothing about why Singer and Hodgman were going with them or why he was meeting Moriarity in Eau Claire; and the explanation that his stay in Eau Claire was occasioned by meeting and associating with others who have not been included in any prosecution, leave unexplained a situation disclosing an association with those who participated in the burglary of such significance that it cannot be offset. The evidence shows beyond reasonable doubt that Smith was active in planning, promoting, and carrying out the plan to commit this crime, and his attempted explanation, that his connection with the affair was accidental, was not only inadequate but false. The conclusion reached by the jury and approved by the trial judge must be affirmed.

*By the Court.*—Judgment affirmed.